UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICARDO PADILLA,

                    Petitioner,

vs.                                    Case No.   2:07-cv-271-FtM-36DNF

SECRETARY, DOC,
                    Respondent.
_____/


**OPINION AND ORDER**

Petitioner Ricardo Padilla (hereinafter "Padilla" or
"Petitioner") initiated this action by filing a Petition for Writ
of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254
on April 26, 2007[1] challenging his plea-based convictions for first
degree murder (count 1) and premeditated first degree murder (count
2) for which he was sentenced to life imprisonment.  Petition at 1.
The Petition sets forth one ground of ineffective assistance of
counsel in connection with counsel's recommendation that Petitioner
plead guilty.  *Id.* at 5.[2]  Petitioner asks that the Court "find
that trial counsel's acts and omissions constitute a failure to
test the adversarial nature of the State's case."  *Id.* at 14.

---

[1]The Petition (Doc. #1) was docketed and filed in this Court
on April 30, 2007.  The Court, however, applies the "mailbox rule"
and deems the Petition "filed on the date it was delivered to
prison authorities for mailing."  Alexander v. Sec'y Dep't of
Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[2]The page numbers referenced herein are to the page of the
identified document as it appears on the Court's case management
electronic computer filing system.

Petitioner filed a Memorandum of Law in support of his Petition (Doc. #2, Pet. Memorandum).

Respondent filed a Limited Response (Doc. #12) detailing Petitioner's post-conviction filings for purposes of establishing that the Petition was timely filed. *See generally* Limited Response. At the time of the filing of the Limited Response, Respondent also filed exhibits (Exhs. 1-13), which include the two volume record on appeal in connection with Petitioner's post-conviction motion (Exh. 5, Vol. I and II) and transcript of the evidentiary hearing held on June 8, 2005, in connection with the post-conviction motion (Exh. 5, Vol. II at 282-343). See Doc. #13, Respondent's Notice of Filing Exhibits (exhibits not scanned). Thereafter, as directed by the Court (Doc. #15), Petitioner filed a Supplemental Response (Doc. #16, Response). Petitioner filed a Reply to the Response (Doc. #17, Reply) and attached one exhibit (Doc. #17-1).

## I.

On April 18, 2002, Padilla was indicted for the first degree murders of Orlando Serrano and Yesenia Lucre Cruz in case number 02-316-CF in the Twentieth Judicial Circuit, Charlotte County, Florida. Exh. 1 at 26. On December 17, 2002, Padilla, represented by court appointed trial counsel, Mark Ahlbrand, entered a negotiated guilty plea to the offenses charged in the indictment. *Id.* at 28-32. The court sentenced Padilla to concurrent terms of

life imprisonment on each count.  *Id.* at 31-32.  Padilla did not appeal his plea-based conviction.

On February 20, 2004, Padilla filed a *pro se* Motion for Post-Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 (hereinafter Rule 3.850 motion), in which he alleged, *inter alia*,[3] that trial counsel coerced him to plead guilty by threat of the death penalty, rendering his plea involuntary.  Exh. 5, Vol. I at 1-22.  The post-conviction court directed the State to file a response to the Rule 3.850 motion.  *Id.* at 29-30.  The State filed a response to the Rule 3.850 motion, and filed a supplemental response attaching a copy of the transcript of Petitioner's plea and sentencing.  *Id.* at 35-44, 117-151.  The post-conviction court scheduled an evidentiary hearing on Petitioner's Rule 3.850 motion, and appointed counsel to represent Petitioner for the hearing.  *Id.* at 152-153.  On December 16, 2005, the post-conviction court denied Padilla's Rule 3.850 claim, attaching copies of the Indictment, Plea Form, Judgment and Sentence, Plea and Sentencing Transcript, and Evidentiary Hearing Transcript.  Exh. 5, Vol. II at 158-343.

In denying Petitioner's Rule 3.850 motion, the post-conviction court recognized that the two prong standard enunciated in

_____

[3]The Court need not address the two other claims for relief raised by Padilla in his Rule 3.850 motion, because these grounds are not raised in the instant Petition.  Similarly, the Court does not address Padilla's Rule 3.800 post-conviction motion because, although relevant for tolling purposes, the motion is not relevant to the instant Petition.

*Strickland v. Washington*, 466 U.S. 668 (1984) governed Petitioner's ineffective assistance of counsel claims and held, in pertinent part:

> 4.   In ground one, the Defendant essentially argues that his plea was involuntary because trial counsel coerced him "to plead guilty by threat of the death penalty." At the evidentiary hearing, the Defendant testified that trial counsel, Mark Ahlbrand, told him that if he was convicted at trial, he would receive the death penalty, and that he felt threatened by Mr. Ahlbrand. (Attached Evidentiary Hearing Tr. at 8, 25).   The Defendant indicated that Mr. Ahlbrand never informed him of the possibility of life if convicted at trial. (Evidentiary Hearing Tr. at 8).   The Defendant indicated that he wanted to go to trial, but pled because Mr. Ahlbrand told him that it was in his best interest to enter the plea, that if he went to trial, he would receive the death penalty, that he did not want to see him on death row for the rest of his life, that he would rather see him in prison with a life sentence, and that maybe, down the road, the life sentence would be overturned. (Evidentiary Hearing Tr. at 11-12, 25).   The Defendant admitted that there was DNA evidence, which placed him at the crime scene, that he provided a confession, and that Mr. Ahlbrand discussed the DNA and the confession with him. (Evidentiary Hearing Tr. at 18).   Additionally, the Defendant conceded that the trial court properly informed him of the potential penalties for counts

one and two (*i.e.*, life imprisonment or the death penalty). (Evidentiary Hearing Tr. at 22).

> 5.   At the evidentiary hearing, Mr. Ahlbrand denied telling the Defendant that the only result of a jury trial would be the death penalty. (Evidentiary Hearing Tr. at 36).   Mr. Ahlbrand stated that there was DNA evidence at the crime scene, that there was a confession, that there were "very incriminating" recorded telephone conversations between the Defendant and family members, and that witnesses at a bar or restaurant provided information to law enforcement regarding the Defendant's admissions concerning a feud between the Defendant and one of the victims.   (Evidentiary Hearing Tr. at 31-34). According to Mr. Ahlbrand, there was a "high probability" that the Defendant would receive the death penalty if convicted of first-degree murder at trial. (Evidentiary Hearing Tr. at 38).   Mr. Ahlbrand stated that he informed

the Defendant of the evidence and of the possibilities if he were found guilty at trial. (Evidentiary Hearing Tr. at 36, 45). Mr. Ahlbrand testified that he told the Defendant:

> that in light of [the Defendant's] confession to a double homicide that the State could, at the time of trial if convicted, present certain aggravating components to his case. And the ones that [he] saw were financial gain, the elimination of a potential witness, and [he] thought that the Court might deal with the second homicide, the one of Ms. Cruz, as being either cold and calculated or heightened premeditation, although [he] did advise him that that might blur into the elimination of a witness.

Evidentiary Hearing Tr. at 36-37). Further, Mr. Ahlbrand testified as follows:

> I told [the Defendant] that there was a possibility that if he went to trial, that if he was convicted of either first or second degree, that the Court would have the option or the jury could make a recommendation that he get life. However, I don't want there to be any misunderstanding here. I - — I did advise him that I thought that that was a gamble that was not worth taking. (Evidentiary Hearing Tr. at 37).

6. According to Mr. Ahlbrand, the plea offer was "a take-it-or-leave-it proposition from the State in the sense that there were timeliness involved with accepting this plea offer, and that in all likelihood after this particular date, [he] wasn't sure that [he] could convince the State to go back and revisit this offer." (Evidentiary Hearing Tr. at 46). Mr. Ahlbrand stated that the State had not filed a notice of intent to seek the death penalty as of December 17, 2002, and that he asked the State not to do so until he had an opportunity to review and discuss discovery with the Defendant. (Evidentiary Hearing Tr. at 50-51). According to Mr. Ahlbrand, the State told him that once that was completed, if the Defendant did not accept the offer, the State would review the case and would file documents to seek the death penalty, if appropriate. (Evidentiary Hearing Tr. at 51).

7.   Mr. Ahlbrand testified that the Defendant told him that he wanted to enter a plea because he did not want to risk the death penalty. (Evidentiary Hearing Tr. at 45). When Mr. Ahlbrand was asked whether the Defendant discussed the reasons for deciding to enter the plea, Mr. Ahlbrand replied as follows:

> [The Defendant] was concerned about the possibility of the death penalty.  And [the Defendant] also thought that if he got a life sentence, there would be avenues that he could pursue following the entry of the plea that might serve to negate the sentence or, at the very least, reduce the sentence.  And [the Defendant] thought that was the better way to go because if he got the death penalty, he thought — - he thought the fall-back position was life; and if he had a life sentence, he thought the fall-back might be a term of years.

(Evidentiary Hearing Tr. at 41-42).  According to Mr. Ahlbrand, he told the Defendant that "all [the Defendant] needed to do is go in there and say he wanted to go to trial, and then there would be a much more protracted period of discovery with depositions and so forth." (Evidentiary Hearing Tr. at 45-46).  Mr. Ahlbrand indicated that the Defendant did not express any fears the day he pled.  (Evidentiary Hearing Tr. at 39).  When Mr. Ahlbrand was asked if he believed that the Defendant's plea was voluntary, he replied, "No question about it."  (Evidentiary Hearing Tr. at 46).

8.   Mr. Ahlbrand's testimony that the Defendant's plea was voluntary is supported by the plea and sentencing transcript.  At the plea and sentencing, Mr. Ahlbrand informed the trial court that he explained the "quality of the case" to the Defendant, that he explained "the position regarding a potential sentence due to an adverse verdict" to the Defendant, and that he and the Defendant discussed potential aggravators, the evidence, and the Defendant's admissions to third parties. (Plea and Sentencing Tr. at 3-4).  Mr. Ahlbrand stated as follows:

> [I]t's really now incumbent upon [the Defendant] to tell me or tell the Court what he wants to do.  And my last discussions with

him were that he was uncertain.  And I told
him that this was now the time to become
certain as to what he wanted to do.

(Plea and Sentencing Tr. at 4).   Also, Mr. Ahlbrand
stated that if the Defendant declined the plea offer,
"then matters will have to be expedited to get the case
to trial."  (Plea and Sentencing Tr. at 5).  The State
indicated that they would pursue the death penalty if the
Defendant did not accept the offer. (Plea and Sentencing
Tr. at 7).

9.  Subsequently, the Defendant stated, "I would take
the plea." (Plea and Sentencing Tr. at 11).   The
Defendant later reiterated that he wanted to accept the
plea offer. (Plea and Sentencing Tr. at 12).  Moreover,
the Defendant indicated that he was not under any
pressure, threats, or promises to enter the plea, that no
one had promised anything other than the plea agreement,
that he was entering the plea freely, knowingly,
voluntarily, and intelligently, that the plea was in his
best interest, that he was entering the plea because he
is guilty, and that he was satisfied with Mr. Ahlbrand's
services. (Plea and Sentencing Tr. at 14, 16-17, 23-24,
26).  The Defendant indicated that he understood that he
had the right to a jury trial, and that if he was
convicted of count one and/or count two, a jury would
convene to consider the punishment, which was life
imprisonment or the death penalty. (Plea and Sentencing
Tr. at 16).

10.  The plea form, signed by the Defendant, states, "No
one has threatened me to make me enter the plea(s)," and
states that the Defendant entered the plea because he is
guilty. (Plea Form at 4).  The Defendant indicated that
he signed the plea form, that Mr. Ahlbrand read the plea
form to him and reviewed the plea form with him, that he
had an opportunity to read the plea form carefully and to
ask Mr. Ahlbrand questions about entering the plea, that
he understood everything in the plea form, and that he
understood that by signing the plea form, he was
acknowledging that he read and understood in the plea
form.  (Plea and Sentencing Tr. at 15-16, 25).

11.  The Court finds that the Defendant failed to
demonstrate that his plea was involuntary due to Mr.
Ahlbrand's alleged coercion.   Mr. Ahlbrand denied
coercing the Defendant.   Specifically, Mr. Ahlbrand
denied telling the Defendant that he would receive the

death penalty if he proceeded to trial. Mr. Ahlbrand's testimony is supported by the plea form and by the plea and sentencing transcript, which demonstrate that the Defendant's plea was voluntary and was not the product of coercion. Therefore, ground one is denied. *See Garcia v. State*, 228 So. 2d 300 (Fla. 3d DCA 1969) (record established that guilty plea was free and voluntary and that plea was not induced by retained counsel's statement that prosecutor had agreed that 20-year sentence would be imposed in return for plea).

Exh. 5, Vol. II at 158-163. Petitioner file a *pro se* appeal of the denial of his Rule 3.850 motion. *Id.* at 344-345. Petitioner filed a *pro se* brief on appeal. Exh. 6. The State filed an answer brief. Exh. 7. On December 20, 2006, the appellate court *per curiam* affirmed the post-conviction trial court's denial of the Rule 3.850 motion. Exh. 9; *Padilla v. State*, 947 So. 2d 1173 (Fla. 2d DCA 2006). Petitioner's request for a rehearing was denied, and mandate issued on February 21, 2007. Exhs. 11-12.

## II.

The instant Petition raises the same ground for relief that Petitioner raised as ground one in his Rule 3.850 motion: Ineffective Assistance of Trial Counsel Proscribed by the U.S. Constitution, Sixth Amendment. Petition at 5. Petitioner claims that "trial counsel firmly told Petitioner that if he went to trial he would certainly lose and receive the death penalty." *Id.* He further asserts that "[f]rom the outset to time of plea counsel steadfastly prodded Petitioner to plea with threats of peril." *Id.* Petitioner provides no other facts in support of his claim but

refers the Court to his underlying Rule 3.850 motion and his Memorandum.[4] *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. *Abdul-Kabir v. Quarterman*, 127 S. Ct. 1654, 1664 (2007); *Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. *Stewart v. Sec'y Dep't of Corr.*, 476 F.3d 1193, 1208 (11th Cir. 2007)(citation omitted). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictisons are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The following legal principles apply to this case.

**A. Deference to State Court Decision**

A federal court must afford a high level of deference to the state court's decision. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to

---

[4]In his Memorandum, Petitioner makes reference to ineffective assistance of counsel caselaw in which counsel is alleged to have failed to subject the prosecution case to "meaningful adversarial testing." Memorandum at 2. In his Reply, Petitioner submits that counsel failed to prepare for trial, failed to file motions to suppress evidence, and failed to have Petitioner evaluated by a psychologist. *See generally* Reply. Said claims, to the extent raised by Petitioner, do not implicate the validity of the plea and are foreclosed by Petitioner's guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)

a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Brown v. Payton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Blankenship v. Hall*, 542 F.3d 1253, 1271 (11th Cir. 2008); *Ferguson*, 527 F.3d at 1146; *Wright v. Sec'y Dep't of Corr.*, 278 F.3d 1245, 1253-54 (11th Cir. 2002).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court

and yet arrives at a different result. *Brown*, 544 U.S. at 141; *Mitchell*, 540 U.S. at 15-16. It is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." *Early v. Parker*, 537 U.S. 3, 8 (2002); *Mitchell*, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedent if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), *cert. denied*, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable," a substantially higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted), *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Mitchell*, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. *Yarborough v. Alvarado*, 541 U.S. 652, 663-64 (2004).

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005); *Henderson*, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." *Parker* v. Head, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. *Rolling v. Crosby*, 438 F.3d 1296, 1299 (11th Cir.), *cert. denied sub nom. Rolling v. McDonough*, 126 S. Ct. 2943 (2006).

**B. Ineffective Assistance of Counsel**

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d) and *Strickland v. Washington*, 466 U.S. 668 (1984). *Newland v. Hall*, 527 F.3d 1162, 1183-84 (11th Cir. 2008). The *Strickland* test applies to challenges of guilty pleas, as well as to convictions by jury. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

In *Strickland*, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance. First, Petitioner must show that counsel's representation was deficient, *i.e.*, that it fell below an objective standard of reasonableness under prevailing professional norms. In the guilty plea context, the first prong of *Strickland* requires that the Petitioner show that his plea was not voluntary "because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases." *Scott v. U.S.*, 325 Fed. Appx. 822, 824 (11th Cir. 2009)(citing *Hill* 474 U.S. at 56-57). Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, and need only provide the client with an understanding of the law in relation to the facts in order that the client may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel is required to make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer an informed opinion as to the best course to be followed in protecting the interests of the client. *Id.* Collateral relief is only available to a petitioner if he "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after

all, a knowing and intelligent act." *McMann v. Richardson*, 397 U.S. 759, 774 (1970).

Second, Petitioner must show that the attorney's deficient performance prejudiced him, *i.e.*, that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning the defendant must show 'a reasonable probability that, but for counsel's errors,' he would have entered a different plea." *Scott*, 325 Fed. Appx. at 824 (quoting *Hill* at 59). In evaluating whether there is a reasonable probability that a petitioner would have insisted on going to trial, the court considers whether petitioner had available a defense that would likely have borne fruit at trial. *Hill*, 474 U.S. at 59.

### III.

Essentially Petitioner asserts that trial counsel coerced him into pleading guilty. The law is well-settled that a guilty plea does not waive a claim for relief that implicates the voluntariness of the plea itself. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Hill v. Lockhart*, 474 U.S. 52 (1985); *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983)(stating "[t]he constitutional standards for a collateral attack on a guilty plea grounded on ineffective assistance of counsel are fairly well established.

-14-

Once a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained). The Supreme Court has held that "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. *Machibroda v. U.S.*, 368 U.S. 487, 493 (1962).

The Court examines the State court decision on Petitioner's Rule 3.850 motion in light of the AEDPA standards summarized above and denies Petitioner relief on his sole ground for relief. The record reflects that the State court applied the clearly determined federal law as determined by the Supreme Court of the United States. As noted earlier, the post-conviction judge recognized that *Strickland* governed Petitioner's ineffective assistance of counsel claim. Therefore, the proper standard for ineffective assistance of counsel was applied by the State court.

Thus, the Court must determine whether the State court unreasonably applied the *Strickland* standard to the facts of Petitioner's case. In other words, Petitioner must demonstrate that the State court's decision was "objectively unreasonable" not just incorrect or erroneous. *Williams v. Taylor*, 529 U.S. at 413.

Here, Petitioner was afforded an evidentiary hearing to establish the factual underpinnings of his claim. Thereafter, the post-conviction trial court determined that trial counsel's

testimony was more credible and consistent with the record evidence in concluding that Petitioner was not coerced, but instead entered a knowing and voluntary guilty plea to the first degree murders of Orlando Serrano and Yesenia Lucre Cruz. A finding of credibility by the trial court is entitled to deference by this Court. 28 U.S.C. § 2254(e).

The Plea, Judgment and Sentence Transcript (Exh. #5, Vol. I at 120-151) reveals that it was Padilla, and not trial counsel, who informed the State court that Petitioner was willing to accept the plea: "I would take the plea then." *Id.* at 130. The record evidences that the case was set for a status conference, during which Padilla agreed to enter a plea. Padilla did so, only after trial counsel advised the court of the circumstances attendant to the State's plea offer and his concern that the plea offer was time sensitive. In particular, the State had ample evidence that Petitioner had committed the killings: Padilla's DNA at the crime scene, Padilla's confession,[5] and Padilla's admissions to third parties. Subsequent to his arrest, Padilla made additional damaging and inculpatory statements to family members in recorded telephone conversations from the jail. Shortly after Petitioner was arraigned on the charges, the State agreed not to pursue the death penalty and offered Padilla life imprisonment in exchange for

---

[5]During his cross examination at the evidentiary hearing, Petitioner acknowledged that his confession to the crimes made to Sheriff detectives was videotaped. Exh. 5, Vol. II at 299.

Padilla's willingness "to testify truthfully against the person who had allegedly ordered the hits or the homicide in this case."[6] *Id.* at 126. Sometime after Padilla's arraignment but prior to the status hearing, the person allegedly responsible for ordering the homicides (Edwin Rasado) died, and the State no longer required Padilla's cooperation. *Id.* The State acknowledged that it was prepared to seek the death penalty if Petitioner did not accept the plea. *Id.*

The court took a recess during the hearing so that Petitioner could discuss the written plea agreement with trial counsel and review it. During the plea colloquy, the court apprised Padilla, and he agreed he understood, that if he proceeded to trial and was found guilty, a jury would be convened to determine the issue of punishment, "whether the punishment would be death sentence or life in prison." *Id.* at 135. In acknowledging that he understood each of his rights, and consistent with the executed plea agreement, Padilla expressly denied that anyone made any threats or promises to him in exchange for his plea. *Id.* at 145. "Solemn declarations

_____

[6]Petitioner agreed to the factual narrative recited by the State. The State proffered that the evidence would show that Orlando Serrano was found dead in his living room with gunshot wounds and knife wounds to his body and Yesencia Lucre Cruz was found dead in her bed with gunshot wounds to her head. Petitioner had accepted a gun from Edwin Rasado and agreed to kill Orlando Serrano and "not leave any witnesses," in exchange for a Cadillac. Exh. 5, Vol. 1 at 146-147.

in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In contrast, at the evidentiary hearing, Petitioner denied that trial counsel ever advised him that if he proceeded to trial he might get a life sentence. Exh. 5, Vol. II at 289. Instead, Petitioner understood he would get death if convicted at trial. *Id.* Trial counsel denied ever telling Petitioner that the only result was death if he went to trial and was convicted. *Id.* at 317. Instead, trial counsel recalled advising Petitioner of the possibilities if he went to trial, including the different penalties if he was convicted of first or second degree murder. *Id.* at 325-26. Counsel emphasized that he offered Petitioner only his recommendations, but conceded he expressed his concern about the viability of the death penalty as a possibility for the case. Counsel stressed, however, that he advised Petitioner that he needed to tell the court what he wanted to do at the status hearing, either he would take the plea or advise the court that he wanted to go to trial. *Id.* at 326. Counsel's testimony on these issues is consistent with and supported by the plea transcript. In relevant part, trial counsel during the status hearing advised Petitioner in open court that "it's really now incumbent upon Mr. Padilla to tell me or tell the court what he want to do." Exh. 5, Vol. I at 123.

Based upon the record the Court finds Petitioner's claim that he was coerced into entering guilty pleas is without substance and contradicted by the record. The evidence instead conclusively shows that Petitioner understood the charges against him, was well informed of the possible penalties if he proceeded to trial, and voluntarily entered guilty pleas cognizant of the consequences of his pleas.

Further, the court concludes that an objectively competent lawyer could have opined that Petitioner would be convicted as charged with two capital crimes, sentenced to death, and have the death penalty affirmed if he proceeded to trial.[7] Consequently, based upon a review of the record the Court finds that the state court decision was not contrary to, nor an unreasonable application of clearly established federal law, or an unreasonable determination of the facts.

Accordingly, it is now

---

[7]During the status conference the trial court opined as follows:

> It appears to me, Mr. Padilla, that your attorney's giving you some pretty competent and thorough advice in a summary of what this case is all about and what the State has in the way of evidence.

> You know, it's not for me to say - - I'm not sure, I have to be sort of discreet in what I say here, but I - - it appears to me to be a very attractive offer, given the nature of the evidence and the quantity of the evidence the State has against you.

Exh. 5, Vol. I at 127.

**ORDERED:**

1.  The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED.**

2.  The Clerk of the Court shall enter judgment accordingly and close the file.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this 19th day of May, 2010.

Charlene Edwards Honeywell
United States District Judge

SA: hmk
Copies: All Parties of Record